**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Harvey PARK,
Defendant-Appellant.**

No. 75–2623.

United States Court of Appeals,
Fifth Circuit.

May 14, 1976.

Al Horn, Mary Joyce Johnson, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Dorothy T. Beasley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

COLEMAN, Circuit Judge.

Harvey Park was tried on consolidated indictments, one charging manufacture of phencyclidine (PCP), a Schedule III controlled substance, 21 U.S.C. § 841(a)(1), and the other charging receipt by a convicted felon of a rifle and a shotgun, 18 U.S.C. App. § 1202(a)(1). Park unsuccessfully objected to the consolidation. The jury found him guilty of the drug charge and acquitted him of the gun charge. He was sentenced to five years imprisonment, followed by three years special parole.

Park assigns four grounds for reversal: (1) the sufficiency of the search warrant authorizing the search of his home; (2) trial of the gun and drug cases together was error; (3) the evidence was insufficient for a jury determination that any controlled substance was manufactured; and (4) the

District Court should have held a hearing on the claim that there had been illegal electronic surveillance.

Upon an intensive consideration of the briefs, record, and oral arguments, we are of the view that the assignments of error are lacking in merit. The judgment of the District Court is affirmed.

### Facts

On September 20, 1973, the appellant, an automotive research mechanic, went to a chemical supply house in Atlanta, Georgia, where he purchased $329 worth of various chemicals and supplies for which he paid cash, but signed the receipt with the name of Glen Evans, a former business associate. After making the purchase Park returned to his place of business, remained there for some period of time, made a trip to a small store to purchase some ice and then drove home.

Previously, Drug Enforcement Administration (DEA) agents, in checking the chemical supply house's records, had noticed what they considered large sum cash purchases on several occasions by a particular individual. The supply house was requested to notify DEA if it should be contacted by this individual. On September 20th an order was placed for this account, so the supply company notified DEA. DEA agents observed the purchase by the appellant Park, followed him to his place of business, and, after losing contact with him for awhile, followed him home, whereupon they placed his house under surveillance.

Through the kitchen window the agents observed Park and his wife, while both appeared to be mixing something. There is some testimony that this surveillance was accomplished with the aid of binoculars. At 2:15 on the morning of September 21st, DEA agents (with the assistance of a U.S. Attorney and a local officer) swore out a search warrant before a state court judge. Armed with the warrant thus obtained, the agents searched Park's house, confiscating beakers, glass tubing, bowls, filters and similar equipment, along with various chemicals, a paper containing a list of chemicals, a recipe that could possibly produce PCP, and residue of a substance which the government's expert identified as phencyclidine.

Based on alleged invalidity of the search warrant, Park filed a motion to suppress the evidence and also moved for discovery of any electronic surveillance. Both motions were denied.

### The Validity of the Search Warrant

The affidavit to the search warrant alleged the following facts as grounds for issuance of the warrant:

1. William Harvey Park has a prior conviction for violation of the Georgia Drug Abuse Control Act. In addition he has been associated and involved with another person who has been convicted of the illegal manufacture of drugs.

2. During the past eight months Park has purchased approximately 11 gallons of toluene spectro, 159 pounds of ethyl ether, 10 pints of piperdine, 3 gallons of cyclohexanone, two 115 volt ac-dc heating mantels, 1 transformer, 4 packages of beakers, 2000 ml. flasks, 4 packages of 11 cm filter paper, 12 grams of para-toluene sulfonic acid. Of these chemicals Park on September 20, 1973, at approximately 4:30 p. m. picked up and paid $329 cash to Fisher Scientific, in Atlanta, for 12 grams of para-toluene sulfonic acid, 124 pounds of anhydrous ethyl ether, five 2000 ml. flasks, 4 packages of 11 cm filter paper. These items were ordered in the name of Glen Evans for EPT, Inc. of 1532 Curtis Road, Atlanta, Ga. On past orders an address of 2419 Bucknell, Lexington, Kentucky, has been used for EPT, Inc. On September 20, 1973, when these items were picked up Park used the name of Glen Evans. This was observed by agents of the Drug Enforcement Administration. William Harvey Park's only known occupation is as a mechanic.

3. Since Park picked up the chemicals and items on the afternoon of September 20, 1973, agents of DEA have maintained a continual surveillance of Park. He was followed to 4036 Green Hawk Trail, De-

Kalb County, Georgia, where he has remained since approximately 8:30 p. m. DEA agents have walked and driven past this house on several occasions and have smelled the strong odor of ether. From a surveillance point DEA agents have observed Park and a female standing at the kitchen window, apparently over the sink, measuring and mixing what are believed to be chemicals.

4. At 12:15 a. m., September 21, 1973, S/A P. W. Perry talked with Stanley Schreiber, a chemist with the DEA Regional Laboratory in Miami, Florida. Mr. Schreiber was given all the above details and information regarding the chemicals and equipment in Park's possession. Mr. Schreiber stated it would be his opinion that these chemicals could be used to manufacture PCP, Phencyclidinehydrochloride, a drug controlled under the Georgia Drug Abuse Control Act and the Federal Controlled Substances Act.

5. Your affiant has talked within the past few minutes to S/A Wayne Smith, a DEA agent, and others who personally observed the activity of Park described in the paragraphs above.

Like the odor of ether emanating from Park's house, this affidavit reeked with probable cause. Nevertheless, appellant attacks it on two grounds.

First, he argues that the affidavit contained negligent and material misstatements, as well as deliberate omissions, thus vitiating the search warrant. Second, it is contended that the search warrant issued on information obtained by an unconstitutional search and seizure because the agents used binoculars to observe activities in Park's home.

Astonishing though it may be, the original hearing on the motion to suppress was conducted on a *false* copy of the affidavit actually used to obtain the search warrant. Appellant had attached to his motion to suppress what he mistakenly thought to be a true copy of the affidavit. At the preliminary hearing the court reporter incorporat-

ed the information contained in the affidavit. Defense counsel then made his copy from the reporter's transcript and attached it to his motion. During one of the transcriptions several errors were made.[1] Pursuant to the hearing held on the inaccurate copy the District Judge found the alleged misstatements to have been immaterial and unintentional. Appellant asked for *rehearing*. Prior to that rehearing, the actual affidavit was discovered. This affidavit contained only one misstatement. Appellant contended that the actual affidavit was materially false and reurged his motion to suppress. The trial judge denied the motion for reconsideration, noting that the government's position had been strengthened since the actual affidavit contained only one inaccurate statement.

The only misstatement in the affidavit was the statement that Park had been involved with and associated with another person who had been convicted of the illegal *manufacture* of drugs. In fact, the person had been convicted of the *sale* of illegal drugs.

Park complains also that the agents failed to inform the magistrate that he has a place of business called Performance Research, where he experiments on race cars and uses various chemicals. While declining to concede that the single error and the lone omission were not deliberate, the appellant makes no showing that they were intentional, designed to deceive the judge issuing the warrant. There is no evidence in the record indicating that the misstatement was anything other than an honest mistake. Hence, we need only to determine whether the mistake and the omission were material to the existence of probable cause.

■ If a misrepresentation in an affidavit for a search warrant is made with the intention of deceiving the magistrate it will invalidate the warrant regardless of whether the error is material to the showing of probable cause. On the other hand, if the error was unintentional, it is of no moment unless it was material to the establishment

---

1. The District Court judge found that there was no attempt to mislead or deceive the Court by anyone, but that it was just an unfortunate mistake.

of probable cause. See *United States v. Thomas,* 5 Cir. 1973, 489 F.2d 664[2] (and cases there cited), *cert. denied,* 1975, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64.

As to the manufacturer/dealer mistake, we agree with the trial court that it was the previous relationship with controlled substances which was most important. This mistake could invalidate the warrant only if its correction, reviewed with the other legitimate allegations, presented a very close case on probable cause. *See United States v. Belcufine,* 1 Cir. 1974, 508 F.2d 58.

Probable cause could easily have been found had the affidavit alleged only the following: (a) Park had a prior drug conviction; (b) Park had previously associated with a convicted drug dealer; (c) Park had purchased in the previous eight months specified chemicals and equipment which could be used in the manufacture of PCP; (d) on the day in issue, Park had picked up a specified large amount of chemicals and supplies which could be used in the manufacture of PCP, and had used the name Glen Evans in purchasing the chemicals; (e) DEA agents had surveilled Park continuously, and he had taken these chemicals to his home; (f) agents smelled the strong odor of ether coming from Park's house on the night the warrant was sought.

Park's second charge of "misrepresentation"—that the affiant failed to state that Park stopped by his business after buying the chemicals and before going home—is without merit. Had the affidavit detailed this sequence, it could only have strengthened the showing of probable cause, in that Park's action of stopping at his place of business and *not* unloading the chemicals, but proceeding with them to his home, undermines rather than supports this suggestion that the chemicals might have been used for a valid business purpose.

Park's second general attack on the validity of the warrant is that some of the information used to establish probable cause was obtained in a manner prohibited by the Fourth Amendment because one of the surveilling agents used binoculars to observe his activities in his home. The record does not clearly reveal whether the allegation that "Park and a female [were] measuring and mixing what appeared to be chemicals" was based solely on the agents' use of binoculars, nor whether the same scene could be viewed without the aid of binoculars.

In any event, we do not here need to reach the question of when, if ever, the use of telescopic devices to view activities in a private home can constitute an impermissible invasion of an area in which the viewee might have a "reasonable expectation of privacy". *See Katz v. United States,* 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Our above statement of the bases of probable cause in the affidavit omits mention of the kitchen-mixing scene. We are convinced that the affidavit supported a finding of probable cause even in the absence of that description of kitchen activity—the conclusion that chemical mixing was in progress could be independently based on the strong smell of ether.

Thus we pretermit the binocular "search" issue. Clarification of the circumstances, if any, in which the use by officers of binoculars can constitute a "search" must await cases in which the issue is clearly presented and necessary to the result. *Cf. United States v. Minton,* 4 Cir. 1973, 488 F.2d 37, *cert. denied* 416 U.S. 936, 94 S.Ct. 1936, 40 L.Ed.2d 287; *United States v. Grimes,* 5 Cir. 1970, 426 F.2d 706; *Commonwealth v. Hernley,* 1970, 216 Pa.Super. 177, 263 A.2d 904, *cert. denied,* 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813; Annot., 48 A.L.R.3d 1178 (1973).

*The Consolidation of the Two Indictments*

The appellant launches a dual attack on the consolidation of the separate indict-

---

**2.** *Compare Thomas* with *United States v. Carmichael,* 7 Cir. 1973, 489 F.2d 983, 988–89 (en banc) and *United States v. Marihart,* 8 Cir. 1974, 492 F.2d 897, 900, *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51. *See also United States v. Belculfine,* 1 Cir. 1974, 508 F.2d 58; *United States v. Armocida,* 3 Cir. 1975, 515 F.2d 29.

ments for one trial. He first states that the joinder was improper because it did not meet the requirements of Rule 8(a) Federal Rules of Criminal Procedure. And, secondly, if the joinder was proper, he was nevertheless prejudiced by the joint trial and the District Court should have severed the charges according to Rule 14, Federal Rules of Criminal Procedure.

Park was first indicted on the gun charge, April 16, 1974.

He was indicted on the drug charge, August 20, 1974.

Both charges owed their origin to the illicit drug activities, including the arrest and search of September, 1973.

The cases, as separate items, were on the calendar for the same day and the parties announced ready for trial. After an unrecorded bench conference, the Court announced that the indictments would be consolidated and tried together. The appellant objected to the consolidation as prejudicial, but the Court overruled the objection and proceeded to trial.

■■■ The government argues that consolidation is discretionary with the trial court and that we may review only for an abuse of discretion. This is not precisely correct.[3]

When a trial court consolidates separate indictments for trial, it makes a contract for a simultaneous hurdle of three obstacles. The first is that the offenses charged in the respective indictments could have been joined in a single indictment, Rule 13. The second is that before offenses may be joined in the same indictment they must be of the same or similar character or based on the same act or transaction or if more than one then connected together or parts of a common scheme or plan, Rule 8(a).[4] The third obstacle is that the joinder must not prejudice the defense, Rule 14.

Misjoinder under Rule 8 is a matter of law and completely reviewable on appeal, *United States v. Marionneaux*, 5 Cir. 1975, 514 F.2d 1244, 1248; *Tillman v. United States*, 5 Cir. 1969, 406 F.2d 930, 933 n. 5, *vacated on other grounds*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742; *United States v. Friedman*, 9 Cir. 1971, 445 F.2d 1076, 1082, *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275; *Ingram v. United States*, 4 Cir. 1959, 272 F.2d 567, 569. Therefore, when we review a trial court's decision to consolidate indictments, we review it, not merely for abuse of discretion but to determine as a matter of law whether the joinder was proper.

The government argues that the drug charge and gun charge were properly joined under 8(a) since they met not one, but two, of the circumstances in which joinder is proper; they were based on the "same

---

**3.** The government, as well as some courts, *e. g., Williams v. United States*, 9 Cir. 1959, 265 F.2d 214, 215; *United States v. Harris*, 7 Cir. 1954, 211 F.2d 656, 659, *cert. denied*, 348 U.S. 822, 75 S.Ct. 34, 99 L.Ed. 648; *Turner v. United States*, 4 Cir. 1955, 222 F.2d 926, 932, confuses the consolidation of charges under Rules 13 and 8(a) with the granting or denying of a severance of *properly joined* charges under Rule 14, *see Tillman v. United States*, 5 Cir. 1969, 406 F.2d 930, 933, vacated in part on other grounds, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742; *United States v. Marionneaux*, 5 Cir. 1975, 514 F.2d 1244, 1248–49.

Confusion also exists because some cases in upholding a trial court's *refusal* to consolidate have contained some language that consolidation was discretionary, *e. g. United States v. Haygood*, 7 Cir. 1974, 502 F.2d 166, 169 n. 5; *Moeller v. United States*, 5 Cir. 1967, 378 F.2d 14, 15. While the *refusal* to consolidate separate indictments is properly within the discre-

tion of the trial court, misjoinder of offenses under Rule 8(a) is a matter of law, completely reviewable on appeal, *see Tillman v. United States, supra.*

**4.** Our opinion in *Tillman v. United States*, 5 Cir. 1969, 406 F.2d 930, *vacated in part on other grounds*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742, has led to confusion about when 8(a), as opposed to 8(b), is properly used. Recent cases, however, make it clear that this Circuit is in line with the prevailing view that subsection (a) applies only when a single defendant is involved and subsection (b) applies only to cases involving multiple defendants, *see United States v. Marionneaux*, 5 Cir. 1975, 514 F.2d 1244, 1248–49; *United States v. Bova*, 5 Cir. 1974, 493 F.2d 33, 35; *United States v. Gentile*, 5 Cir. 1974, 495 F.2d 626, 628 n. 2; C. Wright, Federal Practice and Procedure, § 144 (1969); 8 Moore's Federal Practice § 8.06[1] (2d ed. 1975).

transaction" and, if not the same, they were "two transactions connected together".

■ " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange,* 1926, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 757; *accord, United States v. Friedman, supra,* 445 F.2d at 1083; *Cataneo v. United States,* 4 Cir. 1948, 167 F.2d 820, 823; *United States v. Mikelberg,* 5 Cir. 1975, 517 F.2d 246, *cert. denied,* 1976, —— U.S. ——, 96 S.Ct. 1104, 47 L.Ed.2d 313.

In *Cataneo v. United States, supra,* the court in construing the word "transaction" as used in Rule 8 stated that it, "involves the balancing of conflicting interests: (1) speed, efficiency, and convenience in the functioning of the federal judicial machinery; against (2) the right of the accused to a fair trial, without any substantial prejudice to that right occasioned by the joinder of offenses and/or defendants." *See also Baker v. United States,* 1968, 131 U.S.App. D.C. 7, 401 F.2d 958, 971, *cert. denied,* 1970, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384; Orfield, Joinder in Federal Criminal Procedure, 26 F.R.D. 23, 69 (1961).

■ Park argues that finding the drugs and the gun during the search of his home is an insufficient nexus to say that the charges arose from the same transaction. We disagree.

The Court in *United States v. Pietras,* 8 Cir. 1974, 501 F.2d 182, *cert. denied,* 419 U.S. 1071, 95 S.Ct. 660, 42 L.Ed.2d 668, was faced with a situation similar to the case at bar. In *Pietras* the defendant was charged with, *inter alia,* armed bank robbery, kidnapping, transportation of a firearm in interstate commerce by a convicted felon, transportation of a stolen vehicle, and possession of an unregistered firearm. Pietras attempted to obtain a severance of the count relating to possession of an unregistered firearm from the other counts, since the weapon was not used in connection with the robbery but was merely found in the van. The trial court refused to sever that count and the Court of Appeals found no error stating:

> Fed.R.Crim.P. 8(a) provides that two or more offenses may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions constituting parts of a common scheme or plan. The separate offenses here are based on the same transaction. Possession of the unregistered firearm derives from the firearm's presence in the van which Pietras employed as a means of escape. There is no prerequisite to joinder that the firearm be used in the commission of the robbery. 501 F.2d at 185.

In *United States v. Abshire,* 5 Cir. 1972, 471 F.2d 116, this Court found that the trial court had not erred in refusing to sever charges of transporting a stolen motor vehicle and transporting a firearm by a felon. We found that both offenses arose out of the same sequence of events, and that joinder was therefore proper under Rule 8(a).

■ Realizing that Rule 8 is to be broadly construed in favor of initial joinder, *Tillman v. United States, supra,* 406 F.2d at 934; *United States v. Friedman, supra,* 445 F.2d at 1082, we have no trouble finding that as a matter of law the joinder of the two offenses against Park was proper under Rule 8(a), since they were based on the same transaction.

■ However, having found that joinder was proper, we must now determine whether there was sufficient prejudice to require a severance under Rule 14 of the Federal Rules of Criminal Procedure, *Tillman v. United States, supra,* 406 F.2d at 934.

Unquestionably, the grant or denial of a Rule 14 severance is within the discretion of the trial court and that denial will not warrant reversal unless clear prejudice is shown, *e. g. United States v. Nell,* 5 Cir. 1976, 526 F.2d 1223, 1231; *United States v. Miller,* 5 Cir. 1975, 513 F.2d 791, 793. In discussing the subject of prejudice in con-

nection with Rule 14, we stated in *Tillman v. United States, supra* :

> The existence of prejudice, in large measure, depends upon the facts and circumstances of each case, . . . and it is axiomatic that the granting of a severance is within the discretion of the trial judge. . . . The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. . . . The defendant must show something more than the fact that "a separate trial might offer him a better chance of acquittal." 406 F.2d at 934–35 [citations omitted]. *Accord, United States v. Nell, supra,* 526 F.2d at 1231; *United States v. Lane,* 5 Cir. 1972, 465 F.2d 408, 413–14.

The prejudice which Park says he suffered is twofold. First, he claims that he was prejudiced in the drug charge by the evidence of a previous drug conviction which was referred to in the gun indictment. Second, he claims that he was prejudiced in preparing his defense because the right to testify or not was effectively eliminated by the submission of his prior drug conviction.[5]

The record reveals that the court read to the jury the gun indictment which stated that Park was a felon previously convicted on two counts of violating the Georgia Drug Abuse Control Act. The government did not highlight or allude to the previous conviction during the trial. Park himself brought out the fact that the conviction was for possession of MDA, an illegal drug, and that he had successfully served a two year probationary sentence.

The government argues that, although it was not used, the evidence of the prior drug conviction would have been admissible in a separate trial for the purpose of showing Park's intent to manufacture PCP and his knowledge of drugs. Since the prior conviction could have been used in a separate trial, the government contends that no possible harm could have come by joinder.

As a general rule, evidence of prior crimes is inadmissible, unless it is relevant for some substantial, legitimate purpose, e. g., *United States v. Abshire,* 5 Cir. 1972, 471 F.2d 116, 118. While criminal propensity or disposition is not a legitimate purpose, it has long been the rule in this Circuit that evidence of prior crimes is admissible for the purpose of showing knowledge, intent, motive, design or scheme where such element is an essential element of the commission of the offense, and its probative worth is not outweighed by its prejudice, *see, e. g., Ehrlich v. United States,* 5 Cir. 1956, 238 F.2d 481, 484; *United States v. Arias-Diaz,* 5 Cir. 1974, 497 F.2d 165, 170, *cert. denied,* 1975, 420 U.S. 1003, 95 S.Ct. 1446, 43 L.Ed.2d 761; *United States v. Abshire, supra,* 471 F.2d at 118; *United States v. Payne,* 5 Cir. 1972, 467 F.2d 828, *cert. denied,* 1973, 410 U.S. 912, 93 S.Ct. 975, 35 L.Ed.2d 275; *United States v. Davis,* 5 Cir. 1972, 464 F.2d 558, *cert. denied,* 409 U.S. 1025, 93 S.Ct. 472, 34 L.Ed.2d 318; *United States v. McGlamory,* 5 Cir. 1971, 441 F.2d 130; *United States v. Pittman,* 5 Cir. 1971, 439 F.2d 906, *cert. denied,* 404 U.S. 842, 92 S.Ct. 138, 30 L.Ed.2d 77; C. McCormick, Handbook on the Law of Evidence § 190 (2d ed. 1972).

---

**5.** The record reveals that the appellant had not really determined whether to testify or not. In objecting to the joinder of the two offenses for trial together, counsel for the appellant stated:

> The gun indictment clearly reveals that Mr. Park has a felony record and automatically and immediately puts his character into evidence. Of course it solves one dilemma which we have been wrestling with, whether or not to put Mr. Park on the stand. The usual reason for not putting him on the stand that he might be impeached with his record of course is now gone because the cat is out of the bag, so to speak, but it does seriously deprive us of a flexibility in our defense, and

I don't think there is any particular need for it.

> \*    \*    \*    \*    \*    \*

> I think it seriously deprives us of a real opportunity in this case. We do have a serious substantive defense and I think this has deprived us of that by throwing his record in evidence prematurely, *without us having the opportunity to determine whether we want to put him on the stand or not* [emphasis added]. It is going to be a very close case I think Your Honor will find on the merits in the drug case.
>
> For those reasons, we object.

█ Park was charged with "knowingly, intentionally and unlawfully" manufacturing a controlled substance, so intent and knowledge were essential elements of the crime charged. Moreover, Park's defense was basically that he was experimenting with concocting a fuel or additive to be used in his racing cars and if indeed the substance produced was PCP, it was accidental. We agree with the government that the prior crime could have been admitted in a separate trial for the purpose of showing the appellant's intent and knowledge. Since the prior conviction would have been admissible even if the drug charge had been tried alone, we can see no possible legal prejudice resulting from joinder, cf., Smith v. United States, 5 Cir. 1966, 357 F.2d 486, 489; Drew v. United States, 1964, 118 U.S.App.D.C. 11, 331 F.2d 85, 89–90.

█ The argument by Park that he was prejudiced by not having a meaningful choice of whether to testify is without merit. The record reveals that immediately prior to trial Park had not decided whether to testify or not.[6] The Court in Baker v. United States, supra, 401 F.2d at 977, stated:

[N]o need for a severance exists until the defendant makes a convincing showing both that he has important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.

Accord United States v. Williamson, 5 Cir. 1973, 482 F.2d 508, 512.

We do not think that Park met his burden of demonstrating that he would have been prejudiced if the gun and drug charges had been joined in the same indictment.

### The Sufficiency of the Evidence as to the Identity of the Manufactured Substance

Appellant argues that the sum total of the government's evidence of the presence of an illegal substance fails to meet the required burden of proof. We have thoroughly reviewed the complex and copious testimony of the expert witnesses and find that there was more than enough evidence from which the jury could reasonably conclude that the residue of the manufactured substance was phencyclidine.

### The Demand for a Hearing on the Issue of Electronic Surveillance

█ Appellant filed a pre-trial motion requesting production and disclosure of any and all electronic or other monitoring of his activities. In addition, appellant moved that in the event that the government denied any electronic surveillance in connection with the case, that the Court order a hearing to determine the legal sufficiency of that denial. The government responded with an affidavit sworn to by the Assistant U. S. Attorney which stated: "There was no electronic means used in making these two cases. Should the Court so order, the case agent involved will be made available to so testify."

At the motion to suppress hearing, appellant informed the Court that he had discovered under his car a bumper beeper monitoring device and he felt that the issue should be further explored. Appellant's counsel, Mr. Horn; the Assistant U. S. Attorney, Mr. Ludwick; and Judge Freeman then had the following colloquy:[7]

MR. HORN: Do you state specifically that you have investigated thoroughly and you find no electronic surveillance prior to the arrest, nor that any material that you have obtained was obtained in

---

6. See note 5, supra.

7. Supp. Record on Appeal, Vol. I, pp. 146–154.

any part as a result of electronic surveillance, either bumper beeper or wiretap or other?

MR. LUDWICK: I have investigated and, to the best of my knowledge and belief, that is an accurate statement.

There has been none whatsoever.

MR. HORN: There apparently has been some surveillance since this of an electronic nature.

MR. LUDWICK: Mr. Horn, we are talking about this case, and I state that I have been informed by the Federal Narcotics officers that they have no knowledge whatsoever of any electronic surveillance in relation to these cases.

\*   \*   \*   \*   \*   \*

MR. HORN: In light of the investigation, Your Honor, . . . I would like to know a little bit more.

Has he specifically inquired of any of the agents involved in this case?

MR. LUDWICK: If it please the Court, Your Honor, I have talked to the investigating agents on this case and to the head of the D.E.A., and those people know everything, I presume, that goes on over there, and the answer is just as I have stated it in my response.

THE COURT: I have not read your response.

MR. LUDWICK: My response says none was used in these cases.

There is no evidence whatsoever nor was any received as a result of this.

\*   \*   \*   \*   \*   \*

THE COURT: Well, what Mr. Horn wants to know is, while it may not have been used in this case, was it ever installed by a Government agent in this case, and I want to know, too.

MR. LUDWICK: Well, sir, it was a misunderstanding on my part that that is what he was driving at.

No, it was not installed or used in this case.

\*   \*   \*   \*   \*   \*

MR. LUDWICK: Could we phrase it this way? Up to and including September 20, 21, 1973, [date of appellant's arrest] was it placed on or otherwise used, period?

THE COURT: You say no?

MR. LUDWICK: That is my answer, Your Honor.

Appellant at first argues that the government's denial of electronic surveillance is inadequate to suffice as a denial under the terms of 18 U.S.C. § 3504(a)(1),[8] and that the case should be remanded for a full evidentiary hearing on the matter. However, in his supplemental reply brief (pp. 1, 2), appellant states that he "can make no showing as to the use of the particular beeper discovered . . . under his vehicle over a year after the search which formed the basis of the indictment."

We are uncertain whether the appellant has abandoned this claim or whether he is just stating that he cannot show that this search[9] led to any evidence that could be suppressed, see *United States v. Stull*, 6 Cir., 1975, 521 F.2d 687, 692.

Regardless, we find that the claim must fail. We feel that the sworn affidavit coupled with the oral denials and responses by the government to questions posed by appellant's counsel are sufficient, see *Beverly v. United States*, 5 Cir., 1972, 468 F.2d 732, 744–45.

Furthermore, as the appellant seems to concede by his supplemental reply brief, a review of all the facts and circumstances

---

8.   § 3504. *Litigation concerning sources of evidence*

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act; . . .

9.   We recently held that the placement of a "bumper beeper" on a defendant's vehicle constitutes a search within the meaning of the Fourth Amendment, *United States v. Holmes*, 5 Cir. 1975, 521 F.2d 859, rehearing en banc granted, 525 F.2d 1364.

show that the bumper beeper was not relevant to the instant case. It was not found by the appellant until more than a year after his arrest on the instant charge. It was brought out in the hearing on appellant's application for an appeal bond that a bumper beeper was placed on appellant's car by agents in connection with another entirely separate case arising after the appellant's arrest in the case at bar. See Record on Appeal, Vol. III, pp. 23–24. Under all the circumstances, a remand for an additional hearing would be a waste of judicial resources.

The judgment of the District Court is AFFIRMED.