STATE of Wisconsin, Plaintiff-Respondent,

v.

Keith SCHROEDER, Defendant-Appellant.

Court of Appeals

*Nos. 99–1292–CR, 99–2264–CR. Submitted on briefs April 25, 2000.—Decided May 24, 2000.*

## 2000 WI App 128

(Also reported in 613 N.W.2d 911.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Kevin D. Musolf* of *Robinson Law Firm* of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. BROWN, P.J. Keith Schroeder appeals from judgments convicting him of eighteen counts of possessing child pornography and an order denying him postconviction relief. He raises five issues, two of which stand out from the others. First, we reject his argument that the summary of expert testimony he was provided through discovery was inadequate. Schroeder complained that the summary did not explain certain medical terminology. WISCONSIN STAT. § 971.23(1)(e) (1997–98)[1] does not require that an expert explain all the terms used in a summary of findings; it is enough that the defendant be put on notice that the terminology might come up at trial. Second, there was no Fourth Amendment violation in the crime lab's search of Schroeder's computer; pornographic files were viewed inadvertently while searching for evidence of harassment, and as soon as the investigator saw the pornographic files a new search warrant was issued authorizing continued search for child pornog-

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

raphy. We reject Schroeder's other arguments as well and affirm.

¶ 2. This case originally had nothing to do with pornography; it began as an investigation into online harassment and disorderly conduct. A woman complained to the Outagamie County District Attorney's Office that her name had been posted on the Internet along with her work phone number and suggestive comments about her hobbies. The woman contacted the Internet access provider and requested that the message be removed and it was, but only to be reposted. The district attorney's investigator obtained a court order for the Internet access provider to identify the individual who had posted the message. The provider identified the poster as Schroeder. Based on this information, investigators obtained a search warrant to enter Schroeder's residence and seize his computer and related items in order to search for evidence of his having posted the message.

¶ 3. Officers from Outagamie county and the city of Menasha executed the warrant. Outagamie County Sherriff's Sergeant Harry Sokel attempted to install software on Schroeder's computer to freeze the system so that the contents could not be altered. While searching for computer equipment, Sokel noticed a compact disc that appeared, from its cover, to contain adult pornography. He asked Schroeder if there would be adult pornography on the computer. Schroeder said yes. Sokel then asked Schroeder if there would be child pornography on the computer, and Schroeder asked Sokel what he meant. Sokel said he meant pictures of nude children under the age of sixteen. Schroeder said yes there would be.

¶ 4. The computer was sent to the state crime lab for analysis. Sokel told the investigator who took the

computer to the lab, Steve Malchow, that there might be child pornography on the computer. Malchow in turn told Marty Koch, the crime lab analyst. Malchow told Koch that if he found any child pornography on the computer he should halt his search and call Malchow. In his search for evidence of the online harassment, Koch did find some pornographic pictures of children. He stopped his search and called Malchow to tell him about the child pornography. Based on Koch's findings, a second search warrant was issued giving authority to look for child pornography on Schroeder's computer. Koch resumed his search and found more pictures of naked children, as well as evidence of the online harassment. Schroeder was charged with nineteen counts of possession of child pornography and convicted on eighteen counts after a jury trial. For the harassment, Schroeder was tried in a separate proceeding for unlawful use of a computer and disorderly conduct. The child pornography case is the subject of this appeal.

¶ 5.  Schroeder raises five arguments. First, he claims that Sokel's testimony in the later harassment trial conflicted with his testimony at the pornography trial and that this constitutes newly discovered evidence entitling Schroeder to a new trial. Second, Schroeder argues that the trial court erred by not allowing him to do an in-court computer demonstration "to impeach the credibility of Sergeant Sokel." Third, Schroeder asserts that the State failed to provide him with a proper summary of its expert's testimony and notice of his use of a learned treatise. Fourth, he maintains that information about Internet news groups to which he belonged was irrelevant and prejudicial and should not have been admitted into evidence. Finally, Schroeder claims that the pornographic photos of children should have been suppressed as fruit of the

poisonous tree because they were obtained without a valid search warrant. We will address each argument, but in a different order.

¶ 6.  We first address Schroeder's argument concerning WIS. STAT. § 971.23(1). The statute details information a district attorney must disclose to a defendant. At issue here is paragraph (e), which requires the State to turn over, among other things, reports of statements of experts or, if the expert did not prepare a report or statement, "a written summary of the expert's findings or the subject matter of his or her testimony." *Id.*

¶ 7.  At trial, the State called Dr. Stephen Lazoritz to testify about the ages of the children in the pictures found on Schroeder's computer. Lazoritz estimated the children's ages using the Tanner Sexual Maturation Scale. Schroeder claims that the State did not provide him with a written summary of Lazoritz's findings as required by WIS. STAT. § 971.23(1)(e). The State responds that Schroeder had a police report summarizing Lazoritz's findings and using the Tanner terminology. Schroeder claims that "this information was not sufficient to meet the burden set forth in sec. 971.23(1)(e) for the information did not explain what Tanner was." Schroeder requested that the doctor's testimony be excluded; he specifically stated the he was "not asking for a continuance."

¶ 8.  Whether the State provided Schroeder with information sufficient to meet the requirements of WIS. STAT. § 971.23(1)(e) is a question of law we review de novo. *See State v. Deborah J.Z.*, 228 Wis. 2d 468, 472, 596 N.W.2d 490 (Ct. App.), *review denied*, 230 Wis. 2d 272, 604 N.W.2d 570 (Wis. Oct. 26, 1999) (No. 96–2797–CR).

¶ 9. The summary Schroeder received fulfilled the disclosure requirement of WIS. STAT. § 971.23(1). Schroeder does not dispute that he had a copy of a police report describing an investigator's meeting with Lazoritz. Referring to a discussion of the seized photographs, the report states: "Dr. Lazoritz indicates that this photo depicts a girl identified as a Tanner 3 which indicates an age of no more that 13.9 years." The investigator's summary goes on to use the word "Tanner" eight more times. While Schroeder's counsel's assertion at trial that he did not know what Tanner was may be completely accurate, it was not the State's responsibility to educate him on the subject. The statute does not require that an expert make out a report reciting in detail the bases for his or her opinion. Rather, it requires that the defense be provided with the report if one has been prepared or, if the expert does not prepare a report, a written summary of findings. As with other pretrial discovery, the purpose of turning over findings to defendants is to enable them to prepare for trial themselves, *see State v. Maday*, 179 Wis. 2d 346, 354, 507 N.W.2d 365 (Ct. App. 1993), not to do their preparation for them. Once Schroeder was alerted to the fact that Lazoritz had based his opinions upon Tanner, the onus was on Schroeder to investigate the Tanner method. The context of the report made it clear that Tanner had something to do with determining the age of a child. If Schroeder wondered what Tanner was or whether it was a recognized, reliable professional tool, he should have done his own investigation.[2] Finally,

---

[2] While we have decided that the police report relating Lazoritz's conclusions qualifies as a written summary under WIS. STAT. § 971.23(1)(e), we note that even if it did not, exclusion of Lazoritz's testimony would not have been the preferred

Schroeder points us to no authority that undermines the Tanner scale. So, he fails to show that more information would have helped him. Put another way, he fails to allege or demonstrate that he was harmed by the lack of information about Tanner.

¶ 10. In a related argument, Schroeder claims that he was not timely informed of the State's use of a learned treatise. On the morning of trial, the State provided Schroeder with a copy of "the few pages from a learned treatise which the doctor relied upon in making his findings of the age of the people in the photos." Schroeder argues on appeal that the State should have provided him with the information forty days before trial as required by WIS. STAT. § 908.03(18). The State responds that Schroeder has waived his right to object because, at trial, he did not specify that his objection was based on § 908.03(18). Furthermore, the State points out, although Schroeder's counsel complained that the State did not provide the excerpt until the day of trial, he did not object to its admission into evidence. When the trial court inquired if the State had offered all of its exhibits, Schroeder's counsel stated, "I have no objection." Finally, the State argues that even if Schroeder preserved his objection, any error in admitting the exhibit was harmless—Lazoritz still could have testified that the Tanner scale was an accepted method of determining ages and thus provided an adequate basis for his opinions.

¶ 11. We do not decide whether Schroeder waived his objection because we agree with the State

solution. *See State v. Wild*, 146 Wis. 2d 18, 28, 429 N.W.2d 105 (Ct. App. 1988) (holding that it was an abuse of discretion for the trial court to exclude testimony without first considering whether the State's noncompliance was for good cause).

that any error was harmless. As stated above, Lazoritz could have testified about his opinions based on the Tanner scale even if the excerpt had not been admitted.

¶ 12.   We now turn to Schroeder's claim that the search of his computer violated his right to be free from unreasonable searches and seizures. *See* U.S. CONST. amend. IV; WIS. CONST. art. I, § 11. Schroeder alleges that when Koch, the crime lab analyst, began to search the computer, he was actively looking for child pornography even though there was no warrant for him to do so. The State responds that at that point Koch was looking for evidence of harassment and, in the course of the search, discovered the child pornography. Thus, the State urges, the pornography was discovered under the plain view doctrine.

¶ 13.   In order for the plain view doctrine to apply: "(1) the evidence must be in plain view; (2) the officer must have a prior justification for being in the position from which [he or] she discovers the evidence in 'plain view'; and (3) the evidence seized 'in itself or in itself with facts known to the officer at the time of the seizure, [must provide] probable cause to believe there is a connection between the evidence and criminal activity.'" *State v. Guy*, 172 Wis. 2d 86, 101–02, 492 N.W.2d 311 (1992) (quoting *State v. Washington*, 134 Wis. 2d 108, 121, 396 N.W.2d 156 (1986) (quoting *Bies v. State*, 76 Wis. 2d 457, 464, 251 N.W.2d 461 (1977))) (second alteration in original). While Schroeder never directly addresses the plain view argument, he points out that, after being told that there might be child pornography on the computer, Koch opened files that had names suggestive of child pornography. Schroeder characterizes this as Koch "verifying" that the files did contain child pornography. According to Schroeder,

"This additional step of opening and reviewing the folder to verify it contained child porn makes the search illegal." He thus seems to challenge application of the doctrine on prong one: he claims the files were not in plain view.

¶ 14.   We do not agree. Koch testified that when he searches a computer he systematically goes through and opens user-created files, regardless of their names. This makes sense, as the user is free to name a file anything. Were Koch to limit his search to files whose names suggested the type of evidence he seeks, it would be all too easy for defendants to hide computer evidence: name your porn file "1986.taxreturn" and no one can open it. While systematically opening all user-created files, Koch opened one that contained images that he considered child pornography. At that point, he stopped his search and called Malchow. He did not resume his search and find the rest of the nude images of children until after a second search warrant had been issued. Thus, his initial discovery of child pornography was when he opened a file and saw a nude picture of a child pop up on the screen. It was in plain view. This was no different than an investigator opening a drawer while searching for drugs and seeing a nude picture of a child on top of a pile of socks. The first element of the plain view test is satisfied. Regarding the second and third prongs, it is undisputed that Koch had a warrant to search the computer for evidence of harassment and that the first image Koch found could reasonably be viewed, on its face, as child pornography. The plain view doctrine applies.

¶ 15.   A handful of federal cases have addressed the scope of searches of computer contents, one of which is on all fours with the present case. In *United*

*States v. Gray*, 78 F. Supp. 2d 524 (E.D. Va. 1999), federal agents seized Gray's computers to search for evidence of unauthorized computer intrusions at a library. As in Schroeder's case, the investigator first copied all the files and then began to open them systematically. In his routine search he came across pornographic pictures of minors. At that point, the agent ceased his search and obtained a second search warrant authorizing a search of the files for child pornography. The court ruled that the pornography was discovered under the plain view exception, reasoning as follows:

> In searching for the items listed in the warrant, [the agent] was entitled to examine all of defendant's files to determine whether they contained items that fell within the scope of the warrant. In the course of doing so, he inadvertently discovered evidence of child pornography, which was clearly incriminating on its face.

*Id.* at 529. When searching computer files, investigators necessarily must look at all files and not just those with names suggestive of criminal activity, as "few people keep documents of their criminal transactions in a folder marked '[crime] records.' " *Id.* at 528 (quoting *United States v. Hunter*, 13 F. Supp. 2d 574, 582 (D. Vt. 1998) (quoting *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990))).

¶ 16.   The *Gray* court went on to distinguish *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999), where the court had held the search unreasonable when the investigator abandoned his original search for evidence of drug sales to look for child pornography after inadvertently discovering the first pornographic image. The *Gray* court noted that *Carey* "held that the

first illegal pornographic image, which was discovered inadvertently, was not subject to suppression because it was found in 'plain view' in the course of the authorized search." *Gray*, 78 F. Supp. 2d at 530. The significant difference is that in *Carey* the investigator abandoned his original search and began looking only for more child pornography without getting a new search warrant. Thus, none of the later discovered pornographic images fell under the plain view doctrine. *See Gray*, 78 F. Supp. 2d at 530. In *Gray*, as in the present case, the investigator stopped searching and obtained a second warrant.[3] There, as here, the continued search for child pornography was authorized by the second warrant.

¶ 17. Schroeder also argues that he must be given a new trial in the interests of justice because Sokel's later testimony at Schroeder's disorderly conduct trial is new evidence that conflicts with his testimony from the child pornography trial. At the child pornography trial, Sokel testified that he had "locked rewrite heads" on Schroeder's computer so that its contents could not be modified. At the disorderly conduct trial, Sokel stated that he had attempted to lock the rewrite heads. According to Schroeder, this "new evidence" opens up a whole new defense to him: that the images were somehow modified after the computer was seized. Schroeder claims that the "real controversy was how the nineteen images in question

---

[3] We need not decide what result would obtain if the agent had not stopped his search and obtained a new warrant. Conceivably all the images could fall under the plain view doctrine, provided that the agent continued the search under the original warrant, only actively seeking evidence of the underlying crime. *See United States v. Gray*, 78 F. Supp. 2d 524, 531 n.11 (E.D. Va. 1999).

were downloaded on the defendant's computer and when this downloading occurred." Schroeder further claims that the new evidence sufficiently undermines Sokel's credibility to cast doubt on the convictions.

■

¶ 18. We summarily reject this argument because Schroeder never challenged, at trial, that the images in question were on his hard drive. Indeed, Schroeder's counsel said in his opening statement, "There really is no denying that these images were on his hard drive; that is not actually an issue. You have a concession here that Mr. Schroeder will testify that yes, it was on his hard drive." Schroeder testified that he downloaded the pictures. Then, in his closing argument, Schroeder's counsel challenged every element of the offense except possession.

> Initially, I would like to go over the elements of the offense real briefly; again the first element Mr. Schroeder knowingly possessed computer images. Mr. Gritton [the prosecutor] is correct; we have no contention with that; he fully admits, yes, these images were on his system; that is a foregone conclusion for that.

Schroeder's theory of defense was that he did not realize that the pictures were child pornography, not that he did not download them. Furthermore, even if Schroeder were to change his theory of defense and allege that Sokel framed him, we still would not be persuaded by his argument. Schroeder has shown us no evidence that Sokel downloaded the pictures. On the contrary, the crime lab investigator testified that the images were last modified before Sokel seized Schroeder's computer. In order to obtain a new trial, Schroeder must show, by clear and convincing evi-

dence, that the new evidence creates a reasonable probability that the outcome would be different on retrial. *See State v. Avery*, 213 Wis. 2d 228, 240–41, 570 N.W.2d 573 (Ct. App. 1997). This Schroeder has not done.

¶ 19. In an associated argument, Schroeder alleges that the trial court erred in not allowing him to "do a computer demonstration to impeach the credibility of . . . Sokel." Schroeder apparently sought to show, via a demonstration in court on his computer, that Sokel had modified the contents of the computer. But Schroeder's counsel failed to allege that the demonstration would show anything relating to the nineteen pictures in question. Because of this, the trial court denied the request for the demonstration, finding the evidence to be irrelevant, extraneous and potentially confusing to the jury. We uphold that decision; it has a rational basis and thus does not display an erroneous exercise of discretion. *See State v. Peterson*, 222 Wis. 2d 449, 453, 588 N.W.2d 84 (Ct. App. 1998) (whether to admit demonstrative evidence is a matter for the trial court's discretion).

¶ 20. Finally, we dispose of Schroeder's last argument. He claims that he is entitled to a new trial because the trial court allowed into evidence "irrelevant and prejudicial information of [Internet] newsgroups" to which Schroeder subscribes. This is a nonstarter. The balancing of the probative value of evidence with its possibly prejudicial effect is committed to the sound discretion of the trial court. *See State v. Spraggin*, 77 Wis. 2d 89, 95, 252 N.W.2d 94 (1977). The news groups had names like "alt.binaries.pictures.erotica.early-teens." We agree

with the trial court that such evidence was "certainly relevant and probative" in showing that Schroeder knowingly possessed child pornography.

*By the Court.*—Judgments and order affirmed.