PER CURIAM.
¶1 Estrada was charged with, tried for, and convicted of two crimes that both required proof that his blood contained a controlled substance at the time he operated a motor vehicle. With respect to the particular alleged controlled substance, an expert called by the State testified at trial that Estrada's blood tested positive for a synthetic cannabinoid, and more specifically that the particular synthetic cannabinoid was "5F-AMB." Estrada makes two arguments on appeal. First, he argues that the circuit court erred by permitting the State's expert to testify at trial, even though the expert report that the State produced pretrial failed to give sufficient notice of the content of his testimony. Second, Estrada contends that the circuit court erred when it instructed the jury that "5F-AMB" is a controlled substance because that issue was a fact question for the jury. We reject these arguments and affirm.
Background
¶2 In 2015, police observed Estrada sitting in a car appearing to be mostly unresponsive. An officer observed what appeared to be "marijuana or synthetic marijuana" in Estrada's right hand. Estrada admitted to using "K2," which an officer stated "is a synthetic marijuana." This and other information led to three charges against Estrada. Count 1 alleged that Estrada operated a vehicle while under the influence of a controlled substance. See WIS. STAT. § 346.63(1)(a).[1] Count 2 alleged that Estrada knowingly possessed a controlled substance, namely, a synthetic cannabinoid. See WIS. STAT. § 961.41(3g)(em). Count 3 alleged that Estrada operated a vehicle with a detectable amount of a restricted controlled substance in his blood. See § 346.63(1)(am).
¶3 Prior to trial, the State notified Estrada that it intended to call as a witness at trial Kevin Shanks, who worked for a blood testing laboratory in Indianapolis, Indiana. It is undisputed that this served as notice that Shanks would be the State's expert witness with respect to whether a substance in Estrada's blood was a controlled substance. A laboratory report, disclosed to Estrada, indicated that Estrada's blood tested positive for "synthetic cannabinoids" and positive for "5F-AMB."
¶4 Estrada objected to allowing the State's expert to testify at trial. The nature of Estrada's argument to the circuit court, and more generally the discussions in the circuit court regarding the propriety of the expert's testimony, are often difficult to follow. Also, the discussions included complicated matters that do not end up mattering in light of our analysis in the discussion section below. Regardless, we will assume for purposes of this opinion that Estrada argued that the State's expert should not be allowed to testify that 5F-AMB is a controlled substance under Wisconsin law, that Estrada's blood tested positive for 5F-AMB, or that Estrada's blood tested positive for the presence of a synthetic cannabinoid.
¶5 Regarding trial evidence, the only testimony that matters for purposes of this appeal is the testimony of the State's expert relating to synthetic cannabinoids and the result of the testing of Estrada's blood for the presence of a synthetic cannabinoid. The expert's testimony included the assertions that:
• Estrada's "blood sample was positive for a very specific synthetic cannabinoid, 5F-AMB";
• Common street names for synthetic cannabinoids include "K2";
• 5F-AMB "can be considered an analog of AB-PINACA which is another synthetic cannabinoid";
• AB-PINACA is a Schedule I controlled substance under "Wisconsin controlled substance scheduling."
¶6 During the jury instruction conference, the circuit court proposed instructing the jury, with respect to all three counts, that 5F-AMB is a controlled substance. Although we question whether Estrada made a developed argument supporting his objection to this part of the instructions, the State does not argue forfeiture and we will assume for purposes of this opinion that Estrada sufficiently informed the circuit court that he objected on the ground that the question whether 5F-AMB is a controlled substance is a factual question that must be resolved by the jury. The circuit court rejected the objection and, thus, instructed the jury, as to all counts, that 5F-AMB is a controlled substance.
¶7 The jury found Estrada guilty of operating a vehicle while under the influence of a controlled substance (Count 1) and operating a vehicle with a detectable amount of a restricted controlled substance in his blood (Count 3). The jury found Estrada not guilty of knowingly possessing a controlled substance. Estrada challenges his two convictions.
Discussion
¶8 Estrada was charged with and convicted of both operating a vehicle while under the influence of a controlled substance (Count 1) and operating a vehicle with a restricted controlled substance in his blood (Count 3). See WIS. STAT. § 346.63(1)(a) and (am). We perceive no difference in the parties' notice and instructional error arguments with respect to these two charges. That is, we perceive no difference in the arguments, regardless whether the topic is the State's obligation to prove that the substance detected in Estrada's blood was a "controlled substance" under § 346.63(1)(a) or the State's obligation to prove the substance was a "restricted controlled substance" under § 346.63(1)(am). Accordingly, in the remainder of this opinion, unless otherwise obvious from the discussion, we do not distinguish between Counts 1 and 3 and often use the term "controlled substance" even though as to Count 3 the proper term is "restricted controlled substance."
¶9 In the following sections, we first explain our view that the parties' "analog" arguments are inapposite. We then discuss, respectively, Estrada's contentions that the circuit court erred in permitting expert testimony about the controlled substance in Estrada's blood and erred by instructing the jury that 5F-AMB is a controlled substance.
I. Analog Testimony
¶10 In briefing and during oral argument, the parties led us to believe that this is an "analog" case. As we now explain, it is not.
¶11 Both of the crimes at issue on appeal may be proven, in part, by showing that the operator of a vehicle had either a "controlled substance" or a "controlled substance analog" in his blood. WISCONSIN STAT. § 346.63(1)(a) includes "a controlled substance" and "a controlled substance analog." WISCONSIN STAT. § 346.63(1)(am) uses the term "restricted controlled substance," which WIS. STAT. § 340.01(50m) tells us includes either a Schedule I "controlled substance" or a Schedule I "controlled substance analog." For purposes of the charges here, it is enough to know that a "controlled substance analog" is a substance with a chemical structure "substantially similar to the chemical structure of a controlled substance" and which has a "substantially similar" effect as a substance included in schedule I of WIS. STAT. ch. 961.[2] See WIS. STAT. § 961.01(4m)(a).
¶12 As to both crimes here, the charges listed both a controlled substance and a controlled substance analog. That is to say, although the State could seek to prove that the substance in Estrada's blood was an analog of a statutorily listed substance, the State could also prove that the substance in Estrada's blood was a listed substance. Although Estrada has spent much time attacking the analog part of the expert's testimony, he fails to appreciate that "synthetic cannabinoid" is itself a listed controlled substance and that the State's expert testified, apart from his analog testimony, that the substance in Estrada's blood was a synthetic cannabinoid.
¶13 More specifically, WIS. STAT. § 961.14(4)(tb) states: "Synthetic cannabinoids, including ...." (Emphasis added.) Section 961.14(4)(tb) contains a long list of specifically identified synthetic cannabinoids, but the term "including" means that the list is non-exclusive. It follows that the legislature contemplated that the listed term "synthetic cannabinoids" has meaning by itself, as do other listed terms in WIS. STAT. ch. 961, such as "cocaine." And, here, the State's expert testified that Estrada's "blood sample was positive for a very specific synthetic cannabinoid, 5F-AMB." This testimony plainly means that a substance that is a synthetic cannabinoid, regardless of the "5F-AMB" label, was found in Estrada's blood.
¶14 We readily acknowledge that the prosecutor went on to ask the State's expert whether 5F-AMB is an analog of any other synthetic cannabinoid and the expert answered: "It can be considered an analog of AB-PINACA which is another synthetic cannabinoid, yes." Along this same line, the prosecutor received an affirmative answer when he asked the expert whether AB-PINACA is a Schedule I controlled substance under "Wisconsin controlled substance scheduling." But this testimony was not necessary to prove the element, which was already proven with the expert's plainly stated opinion that 5F-AMB was itself a synthetic cannabinoid and, therefore, that Estrada's blood contained a synthetic cannabinoid.
¶15 As we shall see, the fact that synthetic cannabinoid is a statutorily listed controlled substance has implications for how we address Estrada's arguments. For now, it is sufficient to say that, in the remainder of this opinion, we largely ignore the parties' arguments that are based on the assumption that the expert's analog testimony matters.
II. Admissibility of Expert Testimony
¶16 Estrada argues that the State's expert's report that Estrada received before trial gave him insufficient notice, under WIS. STAT. § 971.23(1)(e) (2015-16), to justify the circuit court's decision to allow that expert to testify about 5F-AMB and whether 5F-AMB is a controlled substance. Before addressing the specifics of Estrada's expert witness argument, we describe the applicable discovery law and pertinent facts.
¶17 WISCONSIN STAT. § 971.23(1)(e) (2015-16) requires, in pertinent part, disclosure of "any reports or statements of experts made in connection with the case ... and the results of any ... scientific test ... that the district attorney intends to offer in evidence at trial." As we explained in State v. Schroeder , 2000 WI App 128, 237 Wis. 2d 575, 613 N.W.2d 911 : "The statute does not require that an expert make out a report reciting in detail the bases for his or her opinion." Id. , ¶9. Rather than requiring details, the purpose of the report or summary "is to enable [defendants] to prepare for trial ..., not to do their preparation for them." Id. (citation omitted). If a circuit court determines that the notice given by a report is insufficient to allow the defense to prepare, the court may exclude the expert's testimony. See § 971.23(7m) (2015-16). Whether a report or summary satisfies § 971.23(1)(e) is a question of law that we review de novo. Schroeder , 237 Wis. 2d 575, ¶8.
¶18 Turning to the facts, Estrada knew that he was charged with operating a vehicle with a controlled substance in his blood and that the particular alleged controlled substance was "5F-AMB." With respect to his possession charge, he knew that he was allegedly in possession of "a synthetic cannabinoid." And, Estrada learned from the expert's report that the expert would opine that Estrada's blood tested positive for "synthetic cannabinoids" and, more specifically, positive for "5F-AMB."
¶19 With this law and factual context in mind, we turn to Estrada's specific arguments.
¶20 Estrada's primary notice argument focuses on the part of the expert's testimony informing the jury that 5F-AMB is a controlled substance. More specifically, Estrada argues that the report did not put him on reasonable notice that the State's expert would testify that the substance found in Estrada's blood, 5F-AMB, was an analog of or had a chemical structure fitting one of the particular statutory descriptions of a "synthetic cannabinoid[ ]" found in WIS. STAT. § 961.14(4)(tb)11.
¶21 We need not decide whether the circuit court erred in permitting the 5F-AMB parts of the State's expert's testimony because we deem any such error harmless.
¶22 With respect to whether Estrada's blood contained a synthetic cannabinoid, the evidence was simple. The State's expert testified that it did. There was no contrary evidence and no reason for the jury to doubt the expert's testimony. Accordingly, we conclude that any error in the admission of 5F-AMB testimony was harmless beyond a reasonable doubt. See State v. Harris , 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397 ("Evidence erroneously admitted is subject to the harmless error rule."); State v. Harvey , 2002 WI 93, ¶48 n.14, 254 Wis. 2d 442, 647 N.W.2d 189 ("[I]n order to conclude that an error 'did not contribute to the verdict' within the meaning of [United States Supreme Court precedent], a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " (quoted source omitted)).
¶23 To the extent Estrada more generally argues that he had insufficient notice to defend against the proposition that his blood tested positive for a synthetic cannabinoid, we conclude that the argument is meritless. Given the expert report's indication that Estrada's blood tested positive for a synthetic cannabinoid, the obvious path to the defense's preparation would have been to contact an expert witness or otherwise seek out expertise as to synthetic cannabinoids, just as one might if the substance at issue was alleged to be cocaine.
¶24 Perhaps Estrada makes no real effort to support this general argument because his 5F-AMB notice argument hinges on the faulty proposition that the part of the notice telling him that his blood tested positive for a synthetic cannabinoid was meaningless. In his appellate briefing, and during oral argument, Estrada went so far as to assert that, even though the report identified the substance in his blood as a synthetic cannabinoid, that information did not inform him that the substance was a controlled substance under Wisconsin law. This is obviously incorrect because, as we have pointed out, synthetic cannabinoid is a statutorily listed substance. That the report more specifically identified the substance as 5F-AMB does not detract from the fact that the report identifies the substance as a synthetic cannabinoid.
¶25 In sum, we conclude that the State's expert's report gave Estrada sufficient information to prepare a defense against the only testimony that mattered-the expert's opinion that Estrada's blood contained a synthetic cannabinoid.
III. Alleged Instructional Error
¶26 With respect to all three counts, the circuit court effectively instructed the jury that the State had the burden of proving that the crime involved a "controlled substance." As to each count, the court instructed the jury that 5F-AMB is a controlled substance. In sum, the circuit court decided that 5F-AMB is a controlled substance and so instructed the jury. Estrada argues that this was error.
¶27 As should be clear by now, in our view it would have been proper for the circuit court to instruct the jury that "synthetic cannabinoid" is a controlled substance. But we also conclude that substituting 5F-AMB for synthetic cannabinoid was, if error, harmless error under the facts in this case. Before discussing harmless error, we choose to discuss the parties' arguments regarding the propriety of the instruction, without definitively resolving the topic.
¶28 Estrada's argument as to why it was error for the circuit court to instruct the jury that 5F-AMB is a controlled substance, boiled down, is straightforward. When an alleged controlled substance is one that is listed in WIS. STAT. ch. 961, the court performs a purely legal function when the court looks at the statute, sees that the particular listed substance is a "controlled substance" under the statutory scheme, and then instructs the jury in accordance with its reading of the statute. For example, a judge may instruct a jury that THC is a controlled substance because THC is statutorily listed as a Schedule I controlled substance, see WIS. STAT. § 961.14(4)(t), and the definition of a "controlled substance" states that the term means "a drug, substance or immediate precursor included in schedules I to V of subch. II," see WIS. STAT. § 961.01(4).
¶29 However, according to Estrada, if a substance, such as 5F-AMB, is not listed by name, whether 5F-AMB is in fact a listed substance or otherwise satisfies a statutory definition of a controlled substance or controlled substance analog is a fact question for the jury, resolved based on expert testimony.
¶30 We do not understand the State to be disputing the proposition that whether a non-listed substance is a "controlled substance" involves fact-finding. Although the State repeatedly characterizes the determination as a "legal" one, the State simultaneously concedes that, under its view of how a circuit court makes such a determination, the court hears expert testimony on the topic and determines whether such testimony is credible. What is missing from the State's argument is any legal reasoning as to why the circuit court may take this factual inquiry away from a jury.
¶31 In briefing and during oral argument, the State repeatedly compared 5F-AMB with listed substances, such as cocaine. For example, the State wrote: "Just as a jury does not decide whether marijuana, cocaine or heroin are controlled substances in Wisconsin, Estrada's jury could not decide whether 5F-AMB was a controlled substance." However, as we have explained, when a substance is a listed substance, as are marijuana (i.e., THC), cocaine, and heroin, a court does not need to hear expert testimony to determine whether the substance is a controlled substance. A court need only look at WIS. STAT. ch. 961. Thus, this comparison goes nowhere.
¶32 At oral argument, the State seemed to equate the circuit court's role with that of the Controlled Substances Board. The Controlled Substances Board is authorized to add substances to the listed substances in WIS. STAT. ch. 961. See WIS. STAT. § 961.11(1). And, as the State acknowledged during oral argument, the Controlled Substances Board engages in fact-finding when adding substances to ch. 961. We fail to understand why the functioning of the Controlled Substances Board supports the same sort of fact-finding by a court. Of course the legislature, acting through the Controlled Substances Board, necessarily engages in fact-finding to determine whether a substance should be a controlled substance. But nothing about that process suggests that a court may do the same.
¶33 The State directs our attention to form jury instruction comments stating that courts should instruct juries whether particular substances are controlled substances.[3] To the extent that these comments are referring to statutorily listed controlled substances, we agree. To the extent that these comments might be read as suggesting that a court may engage in fact-finding based on expert testimony and then instruct a jury that a non-listed substance is a controlled substance, we question the comments. We are unaware of any legal principle that might permit a court, rather than a jury, to resolve this sort of factual issue.
¶34 Finally, the State relies on Berg v. State , 63 Wis. 2d 228, 216 N.W.2d 521 (1974). We are uncertain why the State believes that Berg addresses whether a circuit court may resolve a factual question en route to instructing a jury that a non-listed substance is a controlled substance. Regardless, Berg is inapposite. The Berg court's analysis was purely one of statutory construction. The question was whether the legislature intended to limit the statutory term "lysergic acid diethylamide," that is, LSD, to forms of the drug with the specific isomer d-LSD. See id. at 229, 239. Nothing in the opinion touches on the propriety of a circuit court relying on expert testimony to decide whether a particular substance is a controlled substance.
¶35 In sum, we are unable to discern any reason from the State's arguments as to why it was not error for the circuit court to instruct the jury that 5F-AMB is a controlled substance.
¶36 Still, we choose to not definitively resolve whether the circuit court erred because this legal issue does not affect the outcome. If instructing the jury that 5F-AMB was a controlled substance was error, it was harmless error. See State v. Williams , 2015 WI 75, ¶6, 364 Wis. 2d 126, 867 N.W.2d 736 ("When an erroneous instruction has been given but it is clear beyond a reasonable doubt that the jury would have convicted the defendant had the proper instruction been given, the jury verdict can be affirmed.").
¶37 The instructional error that we assume for purposes of this opinion is that the circuit court instructed the jury that 5F-AMB is a controlled substance, rather than instructing the jury that a synthetic cannabinoid is a controlled substance. As we have discussed, synthetic cannabinoid is a listed Schedule I substance and it is the controlled substance at issue with respect to all three charges here. There is no reason to suppose that the substitution of 5F-AMB for synthetic cannabinoid had any effect on the verdicts.
¶38 The State's expert testified in simple terms that the tests that were run at his laboratory detected a "synthetic cannabinoid" in Estrada's blood and that the particular synthetic cannabinoid was 5F-AMB. There was no competing testimony and no reason to think that the jury would not have understood and accepted as fact that 5F-AMB was a synthetic cannabinoid. Consequently, it is clear beyond a reasonable doubt that a properly instructed jury would have found that the substance in Estrada's blood was a synthetic cannabinoid and, therefore, would have rendered the same verdicts.
Conclusion
¶39 For the reasons above, we affirm.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

The full definition is found in Wis. Stat. § 961.01, which provides:
(4m)(a) "Controlled substance analog" means a substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance included in schedule I or II and:
1. Which has a stimulant, depressant, narcotic or hallucinogenic effect on the central nervous system substantially similar to the stimulant, depressant, narcotic or hallucinogenic effect on the central nervous system of a controlled substance included in schedule I or II; or
2. With respect to a particular individual, which the individual represents or intends to have a stimulant, depressant, narcotic or hallucinogenic effect on the central nervous system substantially similar to the stimulant, depressant, narcotic or hallucinogenic effect on the central nervous system of a controlled substance included in schedule I or II.

For example, Wis JI- Criminal 2664, Comment, n.7, states that "it adds clarity to refer to the name of the alleged substance, if known.... Whether the defendant was actually under the influence of the substance named remains a jury question." And, Wis JI- Criminal 2664B, Comment, n.8, tells us that the jury instruction committee has "concluded that it adds clarity to tell the jury that the alleged substance does qualify as a restricted controlled substance under the statute," and that "[w]hether the defendant actually had a restricted controlled substance in his or her blood remains a jury question."