COURT OF APPEALS
DECISION
DATED AND FILED

January 17, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP243-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF967

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

THOMAS J. BUSA,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Kenosha County: JASON A. ROSSELL, Judge. *Affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Thomas J. Busa appeals a judgment of conviction for second-degree sexual assault of a child, child enticement, and exposing genitals to a child.[1]  He argues that the circuit court erred by denying his motion for access to the victim's counseling records without performing an in-camera review of the records, that the court improperly struck his DNA analyst's testimony as a discovery sanction, that the jury instructions were inadequate, and that his total sentence was unduly harsh.  We reject these arguments and affirm.

## BACKGROUND

¶2     Busa was convicted, following a jury trial, of second-degree sexual assault of a child, child enticement, and exposing his genitals to a minor.  Pretrial, he had sought an in-camera inspection of the victim's medical records relating to some counseling the victim had allegedly received, colloquially known as a *Shiffra-Green* motion.[2]  The circuit court denied that motion, concluding that the defense had failed to satisfy the criteria necessary to obtain an in-camera inspection of the records.

¶3     The victim alleged that the sexual assault occurred in her bed when Busa inserted his finger into her vagina.  Pretrial, Busa had notified the prosecution that he intended to call Dr. Alan Friedman as an expert witness to discuss the results of DNA testing on item A1a, a swabbing of Busa's left-hand

---

[1] Busa's appellate arguments are primarily directed to his second-degree sexual assault of a child conviction.  He raises the other convictions only as they pertain to the length of his global sentence.  As a result, we address those convictions only as they relate to sentencing, and we need not engage in a detailed discussion of the underlying facts.

[2] *See State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), *modified by State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, *and overruled by State v. Johnson*, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174.

fingernail obtained a number of hours after the act of penetration. At the final pretrial, the State notified the circuit court that it did not intend to present any DNA evidence.

¶4     Friedman was called by the defense at trial. The Wisconsin State Crime Laboratory had determined that a low-level minor contributor to the DNA found on the A1a sample was not suitable for interpretation. Friedman testified to the contrary at trial:

> [Friedman:]    Well, let me just say that that was the language that was used by the Wisconsin State Crime Lab analyst and I went back and looked at the low level profile and it was very low level. To see if [the victim] could have been the source of this low level profile, and assuming that there were only two contributors, I concluded … that [the victim] could not have been the source of this low level profile.
>
>  ….
>
> [Defense counsel:]    So … ultimately the conclusions that you reached are contained in the report that you just testified to, is that correct?
>
> [Friedman:]    Everything except that final conclusion[] [that the victim] could not be … the contributor to the A1[a].

¶5     The prosecutor objected to that testimony and moved to strike, asserting that none of Friedman's three reports disclosed to the prosecution provided notice of his opinion that the victim was not a contributor to the DNA found on item A1a. In response, defense counsel stated that Friedman's conclusion was a new one that defense counsel had only learned of the night prior. Defense counsel stated he had not disclosed the new opinion because he had not intended to raise the matter, but he changed his mind after the prosecutor cross-

examined the DNA analyst from the crime laboratory, who had been called as a defense witness.

¶6      The circuit court found that the failure to disclose Friedman's conclusion was an "egregious violation" of the discovery statute, WIS. STAT. § 971.23 (2021-22).[3]  It rejected Busa's argument that Friedman's conclusion was valid rebuttal testimony, noting that the state DNA analyst was called as a defense witness.  Under those circumstances, "[a] witness called by the defense does not open the door to rebuttal."  As a sanction, when the jurors returned to the courtroom they were advised that they could consider only Friedman's testimony and opinions contained in his reports; any of his other testimony and opinions were stricken from the record and not to be considered when reaching a verdict.

¶7      Busa was ultimately convicted.  At sentencing, the circuit court acknowledged Busa's advanced age, medical challenges, and lack of prior offenses.  However, the court concluded that the presentence investigation report (PSI) global sentencing recommendation of approximately eight to nine years' initial confinement with five to seven years' extended supervision did not sufficiently account for the gravity of the offenses or satisfy the deterrent and punishment objectives of sentencing.  The court imposed twelve years' initial confinement and ten years' extended supervision on the second-degree sexual assault of a child conviction, with a consecutive five years' initial confinement and

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

five years' extended supervision on the child enticement conviction.[4] Busa now appeals.

## DISCUSSION

¶8 Busa first argues the circuit court erred by denying an in-camera review of the victim's counseling records. The ***Shiffra-Green*** issue in this case was rendered moot by our supreme court's decision in ***State v. Johnson***, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174, which overruled ***Shiffra*** and validated a patient's statutory privilege to refuse to disclose confidential medical information. *See also* WIS. STAT. § 905.04. Because Busa is not entitled to an in-camera review of the victim's medical records under ***Johnson***, there is no basis to overturn the circuit court's decision.[5]

¶9 Next, Busa argues the circuit court erred by striking Friedman's testimony that the victim was not a contributor to the minor DNA profile found on item A1a. He contends the defense did not violate the discovery statute, or, alternatively, that Friedman's testimony was valid rebuttal evidence following the State's cross-examination of the crime laboratory analyst. The interpretation and application of WIS. STAT. § 971.23 and whether good cause has been shown for a failure to comply with the statute present questions of law that we review de novo. ***State v. DeLeo***, 2002 WI 49, ¶¶14-15, 252 Wis. 2d 289, 643 N.W.2d 480.

---

[4] A one-year jail sentence for the exposure conviction was imposed concurrent to the sentence for child enticement but consecutive to the sentence for second-degree sexual assault of a child.

[5] The parties did not submit a notice of supplemental authority pursuant to WIS. STAT. RULE 809.19(10) or otherwise address the ***Johnson*** case.

¶10 WISCONSIN STAT. § 971.23(2m)(am) requires the defense disclosure of "[a]ny relevant written or recorded statements of a witness … including any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony." Busa variously argues that Friedman's opinion that the victim could not have contributed to the minor DNA profile was adequately disclosed and that no disclosure was necessary because his opinion was "merely an interpretation of a DNA analyst report which was already in the State's possession."

¶11 We are not persuaded. It appears undisputed that the three pretrial reports the defense filed relating to Friedman's testimony did not explicitly reference Friedman's finding that the victim could not have been a contributor to the minor DNA profile. Busa nonetheless argues that such a finding can be inferred from other portions of the report, such that the disclosure was adequate under *State v. Schroeder*, 2000 WI App 128, ¶6, 237 Wis. 2d 575, 613 N.W.2d 911.

¶12 Friedman's second amended report reiterated the crime laboratory analyst's conclusion that the low-level minor contributor profile was "not suitable for interpretation." Later in the report, Friedman wrote: "If the laboratory analyst had concluded that there was evidence that [the victim] was possibly a contributor but the level did not meet the laboratory's criteria for inclusion, the report would have read that the possible contribution from [the victim] was inconclusive."

¶13 Had Friedman's testimony been limited to his interpretation of the state analyst's report, we might see the logic in Busa's argument. At least on its face, though, Friedman's testimony was broader and suggested an independent

conclusion that the victim could not have been a contributor to the low-level minor DNA profile. If Friedman's opinion in that regard was truly a matter of interpretation regarding the state analyst's use of the phrase "not suitable for interpretation," Busa failed to explain that context to the circuit court or to make an offer of proof establishing that as the basis for Friedman's conclusion.

¶14 *Schroeder* is easily distinguishable. There, the State expert used the Tanner Sexual Maturation Scale to estimate the ages of children depicted in child pornography the defendant possessed. *Schroeder*, 237 Wis. 2d 575, ¶7. The State's expert witness disclosure used the word "Tanner" nine times in a context that "made it clear that Tanner had something to do with determining the age of a child." *Id.*, ¶9. The court determined this disclosure was sufficient to satisfy the State's obligations under WIS. STAT. § 971.23.

¶15 Here, by contrast, at most the State was on notice that Friedman might quibble with the meaning of the state analyst's report. Specifically, Busa's disclosures suggested only that Friedman might testify that the crime laboratory analyst would have used different language if she had "concluded that there was evidence that [the victim] was possibly a contributor." But the disclosure was not adequate to inform the State that Friedman had reached his own conclusion about whether the victim could have been a contributor to the minor DNA profile on item A1a.

¶16 Busa also argues that no notice of Friedman's new conclusion was required because his corresponding testimony was intended for rebuttal or

impeachment purposes under WIS. STAT. § 971.23(1)(d).[6] The test to determine whether testimony is bona-fide rebuttal evidence is whether the "evidence became necessary and appropriate" because it controverted the State's case. *See State v. Novy*, 2013 WI 23, ¶34, 346 Wis. 2d 289, 827 N.W.2d 610. But here, the State did not seek to introduce any DNA evidence; Busa called the state crime laboratory analyst to testify. The mere fact that the State cross-examined that witness does not transform Friedman's testimony into bona-fide rebuttal evidence.

¶17 We also reject the argument that Friedman's new opinion was valid impeachment evidence. A party may attack the credibility of any witness, even a witness they have called. WIS. STAT. § 906.07. But given the state of the appellate record, it is unclear how Friedman's opinion would have impacted the credibility of the crime laboratory analyst. Friedman testified only regarding his bare-bones conclusion that the victim could not have been a contributor to the minor DNA profile found on Busa's fingernail. There was no offer of proof regarding how he reached that conclusion, nor a critique of the state laboratory analyst's methodology.

¶18 Moreover, an arguable inconsistency in the conclusions of the two expert witnesses Busa called does not relieve him of his obligations under the discovery statute. Trials are not shell games. While a party may validly refuse to disclose the names and addresses of witnesses intended only for rebuttal and impeachment, *see* WIS. STAT. § 971.23(2m)(a), this does not mean that the parties

---

[6] Subsection (1) of WIS. STAT. § 971.23 pertains to information the State must disclose to the defendant. Instead, the relevant portion of the statute for purposes of Busa's argument is § 971.23(2m)(a), which states that a defendant must disclose: "A list of all witnesses, other than the defendant, whom the defendant intends to call at trial, together with their addresses. This paragraph does not apply to rebuttal witnesses or those called for impeachment only."

may hide the expert conclusions of witnesses already named.[7]   Section 971.23(2m)(am) broadly requires the disclosure of "[*a*]*ny* relevant written or recorded statements" of expert witnesses, and the presence or absence of DNA consistent with the victim's on Busa's fingernail was certainly a matter that was relevant to the question of whether he committed the charged offense.  (Emphasis added.)

¶19   Busa next argues the circuit court's instruction to the jury regarding the definition of "sexual intercourse" failed to accurately state the law. Specifically, he argues that the instruction failed to apprise the jury that sexual intercourse did not include an intrusion for a proper non-sexual purpose, as in *State v. Lesik*, 2010 WI App 12, ¶13, 322 Wis. 2d 753, 780 N.W.2d 210 (holding that "bona fide medical, health care, and hygiene procedures" do not constitute "sexual intercourse" for purposes of the statute prohibiting sexual assault of a child).  Busa asserts this was an important qualification, given his defense that any contact with the victim's vagina was accidental and occurred when he was grabbing a blanket.

¶20   Busa acknowledges this argument was forfeited by his failure to request the instruction at trial.  *See* *State v. McKellips*, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258.  However, he requests that we invoke our WIS. STAT. § 752.35 discretionary reversal authority, apparently on the basis that the real controversy was not fully tried.  We use our power of discretionary reversal sparingly and only in exceptional cases.  *McKellips*, 369 Wis. 2d 437, ¶30.

---

[7] In this vein, it is worth noting that Busa does not argue that he need not have disclosed Friedman as a witness.  His argument is that only a portion of Friedman's testimony was exempt from disclosure.

¶21   We are not persuaded that this is an exceptional case. Busa's argument rests on the assertion that he was entitled to a *Lesik* instruction, but his defense of accidental penetration was fundamentally different from the defense at issue in *Lesik*. There, the defendant argued that any intrusion into the victim's vagina occurred while he was cleaning the victim and medicating the rashes she developed as a result of her medical condition. *See Lesik*, 322 Wis. 2d 753, ¶3. In short, Busa has failed to establish that the law mandates an instruction advising that "sexual intercourse" does not include penetration for a "proper non-sexual purpose" where the defendant's only claim is that the penetration was accidental.

¶22   Busa's final argument is that he was sentenced too harshly for his crimes. When a defendant argues that his or her sentence was unduly harsh or excessive, we may find an erroneous exercise of discretion only when the sentence is so excessive and unusual and so disproportionate to the offense that it shocks the public sentiment and violates the judgment of reasonable people concerning what is right and proper under the circumstances. *State v. Grindemann*, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507.

¶23   Busa's global sentence in this case does not meet these criteria. His individual sentences were well within the maximum penalties for his crimes, which were forty years' incarceration for the sexual assault conviction and twenty-five years' incarceration for child enticement. *See* WIS. STAT. § 939.50(2)(c), (d). His sentence was therefore not presumptively harsh or excessive.

¶24   We are not persuaded that the sentence was rendered harsh or excessive by virtue of Busa's advanced age or medical condition. Busa was seventy years old when sentenced and had recently suffered a stroke. The circuit court explicitly acknowledged these matters at sentencing, but it found that a

lesser sentence would depreciate the seriousness of the offenses and would not adequately serve a deterrent function. Busa committed serious crimes, and it was within the court's discretion to sentence him accordingly.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.